**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Jose V.P.R.,

Petitioner,

v.

Sheriff of Freeborn County, Minnesota, The; Warden of the Freeborn County Adult Detention Center, The; Secretary of Homeland Security, The; Director of U.S. Immigration and Customs Enforcement, The; Attorney General of the United States, The,

Respondents.

Case No. 26-cv-3047 (NEB/DLM)

**REPORT AND RECOMMENDATION**

---

This matter is before the Court on Petitioner Jose V.P.R.'s Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. 1.) Jose V.P.R. alleges that his immigration detention violates federal law, as well as the Fourth Amendment's prohibition against warrantless arrest, and the Fifth Amendment's Due Process Clause. (*See generally id.*) Respondents, for their part, contend that Petitioner's arrest and detention comply with federal law and therefore, he is not entitled to habeas relief. (*See generally* Doc. 7.) The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. The undersigned respectfully recommends granting Jose V.P.R.'s Petition, as explained more fully described below.

## BACKGROUND

Jose V.P.R. is 47 years old and a native and citizen of Mexico. (Docs. 1 ¶¶ 1, 13; 7-4 at 1.) He has resided in the United States since 1999 and has lived in this country continuously for 27 years. (Doc. 1 ¶¶ 1, 14.) Jose V.P.R. has no criminal history and has maintained full-time employment. (*Id.* ¶ 15; *see also* 7-4 at 2.) He also helps care for his elderly mother. (Doc. 1 ¶ 16.)

Jose V.P.R. represents in his petition that on June 3, 2026, he was "traveling in a work van with his crew" to a job site when agents with Immigration and Customs Enforcement ("ICE") "stopped that van and detained the entire crew" without warning. (*Id.* ¶¶ 18, 19.) According to Jose V.P.R., ICE "did not posses an arrest warrant or a deportation order for Petitioner." (*Id.* ¶ 20.) He was then taken to the Freeborn County Adult Detention Center in Albert Lea, Minnesota, where he remains in custody. (*Id.* ¶ 23.)

In response to Jose V.P.R.'s petition, ICE Deportation Officer ("DO") Benjamin Northwood provided a declaration on behalf of Respondents. (Doc. 7.) DO Northwood asserts that on June 3, 2026, ICE "encountered Petitioner on the side of the road on highway 35 between Prescott, Wisconsin and Diamond Bluff, Wisconsin, north of Red Wing, Minnesota." (*Id.* ¶ 5.) According to Respondents, ICE officers conducted a records check in Department of Homeland Security ("DHS") databases, and concluded based on biometric information and an interview that Jose V.P.R. "was an unlawfully present alien." (*Id.*) Jose V.P.R. "presented identification documents that ICE/ERO officers reviewed for immigration verification. Petitioner freely admitted to being a citizen and national of Mexico and acknowledged that he did not have a visa, or a lawful basis to be preset [sic]

in the United States." (*Id.*) An ICE Supervisory Detention and Deportation Officer ("SDDO") "issued a Warrant for Arrest of Alien, Form I-200 [and] served Petitioner with the Form I-200." (*Id.* ¶ 6; Doc. 7-3.) ICE then took Jose V.P.R. "into custody without incident. ICE/ERO transported Petitioner to Bishop Henry Whipple Federal Building for further administrative processing." (Doc. 7 ¶ 6.) That same day, ICE issued and served Jose V.P.R. the Notice to Appear, Form I-862. (*Id.* ¶ 7; Doc. 7-1.) ICE then transported Jose V.P.R. to the Freeborn County Jail where he remains detained. (Doc. 7 ¶ 8.)

Jose V.P.R. filed is habeas petition pro se on June 22, 2026. (Doc. 1.) He alleges that his arrest and detention violate the Fourth and Fifth Amendments, as well as federal law. As a result, Petitioner argues, he should be released immediately or afforded a bond hearing. Respondents, for their part, contend that Jose V.P.R.'s petition fails because his arrest was supported by a warrant, and he is detained under the mandatory detention provision found in 8 U.S.C. § 1225(b)(2), and he therefore lacks any statutory or constitutional right to be released from custody. (*See generally* Doc. 6.) On July 10, 2026, attorney Leopold Epee entered an appearance on behalf of Jose V.P.R., and requested and extension of Petitioner's reply deadline, which the Court granted. (Docs. 9, 10, 11.) Then on July 23, Petitioner's counsel filed a Letter to District Judge, informing the Court and Respondents that he would "not be making additional filings on behalf of Petitioner." (Doc. 12.) Accordingly, this matter is now fully briefed and ripe for Report and Recommendation.

## ANALYSIS

## I. JOSE V.P.R.'S HABEAS PETITION SHOULD BE GRANTED.

The writ of habeas corpus is a procedure available to prisoners to create government accountability for unlawful detention. *See Peyton v. Rowe*, 391 U.S. 54, 58 (1968); *Ex parte McCardle*, 73 U.S. (6 Wall.) 318, 325-26 (1867). The right to habeas relief extends to "persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900-01 (D. Minn. 2020) (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003) and *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).) The petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful. *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

### A. Statutory Detention Authority.

Respondents contend that the Eighth Circuit's interpretation of 8 U.S.C. § 1225(b)(2)(A) in *Avila v. Bondi* requires the mandatory detention of any noncitizen present in the United States who has not been admitted, whether they have just arrived at the border or have been present in the interior of the country for some time. 170 F.4th 1128, 1137 (8th Cir. 2026). Jose V.P.R. does not address *Avila*, but he nonetheless argues that because he has been in the United States since 1999, he cannot be seeking admission and therefore his detention under § 1225(b)(2) is unlawful, and he is instead subject to detention under 8 U.S.C. § 1226(a). (Doc. 1 ¶ 25.)

Respondents assert that Jose V.P.R. as a noncitizen who has not been lawfully admitted, and is therefore an applicant for admission "whose legal status is governed by 8 U.S.C. § 1225" and "is subject to mandatory detention[.]" (Doc. 6 at 4.) The Court agrees

that under *Avila*, Respondents have statutory authority under § 1225(b)(2) to detain Jose V.P.R. But because statutory authority to detain does not itself resolve the petition, the Court proceeds to Petitioner's other claims.

**B. Jose V.P.R.'s Arrest Under 8 U.S.C. § 1357.**

Jose V.P.R. claims that he was arrested without a warrant in violation of the Fourth and Fifth Amendments, but the heart of his argument attacks the validity of his arrest under 8 U.S.C. § 1357(a)(2). "ICE may arrest a noncitizen without a warrant only when an officer has 'reason to believe' both that a noncitizen is in violation of the immigration laws and 'is likely to escape before a warrant can be obtained for his arrest.'" *Jorge Anibal P. P. v. Todd Blanche, Acting Att'y Gen., et al*., No. 26-cv-3125 (LMP/LIB), 2026 WL 2017765, at *3 (D. Minn. July 13, 2026) (quoting 8 U.S.C. § 1357(a)(2)). So, says Jose V.P.R., because his warrantless arrest did not meet the requirements of § 1357(a)(2), it necessarily fails under the Fourth and Fifth Amendments.

Respondents first suggest that Jose V.P.R. was arrested pursuant to a valid warrant. (Doc. 6 at 11-12.) Respondents are wrong. Title 8 C.F.R. § 236.1(b), the federal regulation which governs the apprehension, custody, and detention of noncitizens, requires that "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." *Id*. The record here shows that the Form I-200 warrant was issued and served on Jose V.P.R. in Prescott, Wisconsin where he was taken into custody. (Docs. 7 ¶ 6; 7-3.) But the NTA was issued at Fort Snelling, where Jose V.P.R. was processed after his arrest. (Docs. 7 ¶¶ 6-7; 7-1.)

The break in time and location between Jose V.P.R.'s arrest and the issuance of the NTA is not trivial. The Form I-200 warrant authorizes ICE to arrest noncitizens while removal proceedings are ongoing. *See* 8 C.F.R. § 236.1(b)(1). A warrant issued before removal proceedings have started thus implies authority that ICE does not possess. *See, e.g.*, *Gonzalez Ochoa v. McCleary*, 816 F. Supp. 3d 921, 927 (S.D. Iowa 2026) ("The temporal aspects of this language are clear: an arrest warrant may be issued '[a]t the time of issuance' of the Notice to Appear or 'thereafter.' Not 'before.'") Because the evidence before the Court shows that the NTA was issued *after* the Form I-200, the Court concludes that Jose V.P.R. was not arrested pursuant to a valid warrant.

Since Jose V.P.R. was not arrested pursuant to a valid warrant, the Court must determine whether he was arrested lawfully without a warrant. Although immigration officers are not required to issue a warrant in order to detain a noncitizen under 8 U.S.C. § 1225(b)(2)(A), *see Muse v. Mullin*, No. 26-cv-4024-CJW-MAR, 2026 WL 1008532, at *2-3 (N.D. Iowa Apr. 14, 2026), warrantless arrests of noncitizens detained under § 1225(b)(2)(A) must nonetheless comply with the requirements of 8 U.S.C. § 1357(a)(2), *see id*; *Francisco M. A. v. Blanche*, No. 26-cv-2032 (JRT/EMB), 2026 WL 1229701, at *2 (D. Minn. May 5, 2026). Respondents contend that Jose V.P.R.'s arrest satisfies § 1357 and its implementing regulation at 8 C.F.R. § 287.3, and therefore his constitutional claim affords him no habeas relief.

Section 1357 permits an ICE officer to arrest a noncitizen who the officer has "reason to believe" is both in violation of immigration laws and "likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). Reason to believe "means

constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010). Jose V.P.R. contends that "ICE lacked any individualized basis to believe [he] was likely to escape" and his detention with a group of workers amounts to "nothing more" than a "dragnet seizure forbidden by the Fourth Amendment." (Doc. 1 ¶ 28.) Respondents disagree.

Based on the evidentiary record before it, the Court agrees with Respondents that ICE had reason to believe Jose V.P.R. was in violation of immigration laws when officers arrested him, based on his voluntary statement that he did not have lawful immigration status. (*See* Doc. 7-4 at 2-3.) But based on that same record, this Court cannot accept Respondents' position that ICE had reason to believe Jose V.P.R. was likely to escape because he "had been present in the U.S. without authorization, or attempting to seek authorization, for over two decades." (Doc. 6 at 14.)

First, a noncitizen's unlawful presence in the United States does not necessarily establish a likelihood of escape by virtue of being a removable noncitizen. *Francisco M.A.,* 2026 WL 1229701, at *3; *see also Ruben D.A.G. v. Blanche*, 26-cv-2041, slip op. 9, at 8 (D. Minn. Apr. 20, 2026). Such a reading would all but collapse § 1357(a)(2)'s two distinct requirements that an officer have reason to believe that a noncitizen 1) is in the United States unlawfully, and 2) is "likely to escape before a warrant can be obtained for his arrest" into one, thus rendering the statute's limitations on warrantless arrests meaningless.

Second, and more substantively, Respondents have not shown that ICE had reason to believe Jose V.P.R. would likely escape before officers could obtain a warrant. Courts

have taken the phrase "likely to escape" to mean "likely to evade detention by immigration officers." *Hussen v. Noem*, 822 F. Supp. 3d 944, 988 (D. Minn. 2026) (quoting *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1006-07 (N.D. Ill. 2016)); *see also Jesus F. D. v. Mullin*, No. 26-cv-2486 (PJS/DTS), Doc. 10 at 8 (D. Minn. June 10, 2026) (interpreting "likely to escape" to mean "risk of flight"); *Campos v. United States*, 888 F.3d 724, 734-35 (5th Cir. 2018) (interpreting "likely to escape" as likely to "disappear before a warrant could be obtained"); *United States v. Khan*, 324 F. Supp. 2d 1177, 1187 (D. Colo. 2004). This analysis contemplates not just the likelihood that a person will be located at the scene of an encounter with ICE, but also the likelihood that ICE will be able arrest the person at "another clearly identifiable location." *Walther Ademir A. S. v. Blanche*, No. 26-cv-2804 (LMP/SGE), 2026 WL 1734906, at *3 (D. Minn. June 16, 2026) (quoting *Escobar Molina v. U.S. Dep't of Homeland Sec.*, No. 25-cv-3417 (BAH), 2026 WL 1256234, at *10 (D.D.C. May 7, 2026)). Recent guidance from ICE is consistent with this definition: a January 2026 memorandum from former ICE Acting Director Todd Lyons interpreted the "plain meaning" of the phrase "likely to escape" in § 1357(a)(2) as likely "to be located at the scene of the encounter *or another clearly identifiable location once an administrative warrant is obtained*." (Doc. 7-5 at 16) (emphasis added). The question, therefore, is not merely whether Jose V.P.R. was likely to flee from the roadside stop, but whether ICE would be able to locate him after obtaining a warrant for his arrest. *See Walther Ademir A. S.*, 2026 WL 1734906, at *3.

Now to Respondents' evidence. Respondents' declaration and exhibits show that ICE encountered two vehicles, a white van and a white Hyundai, with multiple occupants

on June 3, 2026. (Docs. 7 ¶¶ 5-7; 7-4 at 2-4.) But Respondents have presented no evidence that Jose V.P.R. was driving either vehicle or had access to any keys. (Docs. 7 ¶¶ 5-7; 7-4 at 2-4.) And while perhaps Jose V.P.R. *could* have fled the scene, that is only part of the inquiry. Here, the evidentiary record shows that Jose V.P.R. has no criminal history, was forthcoming and honest with ICE about his immigration status, and provided officers with his driver's license. (Doc. 7-4 at 3 ("The occupants presented documentation to the deputies, who then transferred the documents to [ICE officers] for immigration verification. The documents consisted of Minnesota identification cards and one Mexican voter registration card[]."), 4 (listing Jose V.P.R.'s driver's license number).) The evidence belies Respondents' suggestion that ICE had a reasonable belief that Jose V.P.R. was likely to escape. After all, with his driver's license in hand, ICE could have located Jose V.P.R. at a clearly identifiable location: the address on his license. Moreover, based on the Form I-213, which states that Jose V.P.R. and the other "subjects" "were served I-200's with concurrence from SDDO Munoz," ICE officers did not believe they were effecting a warrantless arrest, nor did they mention any belief that Jose V.P.R. would likely escape. (*See* Docs. 7-4 at 3; 7-3.) As a result, the Court finds that Respondents have failed to establish probable cause for Jose V.P.R.'s arrest under 8 U.S.C. § 1357(a)(2). *See Vladimir G. v. Easterwood*, No. 26-cv-2971 (JMB/ECW), 2026 WL 1786418, at *3 (D. Minn. June 22, 2026). Jose V.P.R.'s arrest was therefore unlawful, and the Court recommends he be released immediately.

**C. Due Process.**

Jose V.P.R. also contends that even if he is subject to detention under § 1225(b)(2), "his continued custody without an individualized bond hearing violates the Due Process Clause of the Fifth Amendment[.]" (Doc. 1 ¶ 35.) Although the Court recommends that Jose V.P.R.'s petition be granted based on his unlawful warrantless arrest, for the sake of completeness, the Court will also address whether his continued detention without a bond hearing violates the Fifth Amendment. The answer is yes.

While *Avila* addressed a noncitizen's statutory rights under § 1225(b)(2)(A), it did not reach the question of a noncitizen's due process rights. 170 F.4th at 1140 & n.8 (Erickson, J., dissenting). Respondents assert that Jose V.P.R.'s due process rights do not require a bond hearing because Congress provided the applicable process in § 1225, and § 1225(b)(2)(A) requires detention when the applicant is not clearly and beyond doubt entitled to admission. According to Respondents, neither procedural nor substantive due process provides Jose V.P.R. with the relief he seeks simply because § 1225(b)(2)(A) mandates his detention until removal proceedings have concluded, and they have not.

Noncitizens, such as Jose V.P.R. are entitled to Fifth Amendment due process of law. *Demore*, 538 U.S. at 523; *Sanchez-Valasco v. Holder*, 593 F.3d 733, 737 (8th Cir. 2010). Since *Avila*, many courts within this District have found that a noncitizen's detention under § 1225(b)(2) without an individualized bond hearing violates their rights under the Due Process Clause. *See, e.g.*, *Felipe S.P. v. Blanche, et al*., No. 26-cv-2212 (NEB/DJF), 2026 WL 1911656, at *1 (D. Minn. July 2, 2026); *Jesus Alejandro G.A. v. Blanche et al*, No. 26-cv-1932 (LMP/ECW), 2026 WL 1383138, at *10 (D. Minn. May 18,

2026). Still, the law is not definitively settled, *see Brayam G. G. v. Easterwood*, No. 26-cv-1985 (DMT/EMB), Doc. 22 at 3-4 (D. Minn. Apr. 15, 2026) (rejecting due process argument by habeas petitioner detained under Section 1225(b)(2)), so the issue deserves a closer look.

Respondents contend that under the Supreme Court's decision in *Demore v. Kim*, detention during deportation proceedings is constitutionally valid. (Doc. 6 at 8 (citing *Demore*, 538 U.S. 510, 523 (2003).) Thus, say Respondents, Jose V.P.R.'s due process challenge to his mandatory detention under § 1225(b) must fail. But *Demore* and the Eighth Circuit's decision in *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024), address challenges to mandatory detention under § 1226(c), not § 1225(b)(2). The distinction matters.

Section 1226(c)'s mandatory detention provisions apply to certain noncitizens who have committed listed criminal offenses, and to certain categories of inadmissible people. *Id*. § 1226(c)(1)(A)-(E). The Supreme Court thus held in *Demore*, that "Congress, justifiably concerned that deportable criminal [noncitizens] who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the brief period necessary for their removal proceedings" under § 1226(c). 538 U.S. at 513. Therefore, detaining such noncitizens for the time necessary to complete their removal, without an individualized determination of flight risk, did not violate the Due Process Clause. *Id*. at 522-31. *Demore*, which addresses the constitutionality of a noncitizen's detention pending removal under § 1226(c), does not address the constitutionality of a noncitizen's detention without a hearing under § 1225(b)(2)(A).

While *Demore* concluded that noncitizens could be constitutionally detained under § 1226(c), the *Banyee* court "grappled with whether a multi-factor reasonability test applies to constitutional challenges to the length of detention." *Felipe S.P.*, 2026 WL 1911656, at *5. Looking to *Demore*, 538 U.S. at 528, and *Zadvydas*, 533 U.S. at 682, the Eighth Circuit found "[t]hese cases leave no room for a multi-factor 'reasonableness' test," and therefore, petitioner was not entitled to an individualized review. *Banyee*, 115 F.4th at 933-34. Such a balancing test was "unnecessary because *Zadvydas* and *Demore* did all the balancing that was necessary—based on those cases, noncitizens with criminal convictions detained under Section 1226(c) can be detained during the entirety of deportation proceedings." *Felipe S.P.*, 2026 WL 1911656, at *5 (citing *Banyee*, 115 F.4th at 933). Read in context, *Banyee's* statement that *Demore* and *Zadvydas* "leave no room for a multi-factor 'reasonableness' test," means that Banyee, who was detained under Section 1226(c), is not entitled to any *further* balancing[.]" *Id.* at *6 (emphasis in original) (citing *Banyee*, 115 F.4th at 933). This makes sense because Banyee's interests had been fully taken into consideration under *Demore* and *Zadvydas*. *Id.* The Eighth Circuit's decision in *Banyee* addresses the constitutionality of the length of a noncitizen's detention under § 1226(c) pending removal. *Id.* It is not therefore a categorical bar to due process challenges to any noncitizen's detention pending removal proceedings. *Id.*

Nor does Jose V.P.R.'s status a person "seeking admission" necessarily limit the availability of his due process claim. Relying on *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020), *Landon v. Plasencia*, 459 U.S. 21 (1982), and *Kaplan v. Tod*, 267 U.S. 228 (1925), Respondents argue that "lawful admission" and "not physical entry" is

the threshold barrier to lodge a due process claim. (Doc. 6 at 9-10.) In Respondents' view, until a person has been lawfully admitted, the only due process available "is whatever process is 'expressly conferred by Congress.'" (*Id*. at 9 (quoting *Thuraissigiam*, 591 U.S. at 138).) *Thuraissigiam* held that noncitizens detained near the border have no constitutional right to review their expedited deportation orders. *Id*. at 117-18, 140. But this case is different from *Thurasissigiam*. Jose V.P.R. does not challenge the reviewability of his removal, rather he contests the lawfulness of his detention without an individualized hearing. *See Felipe S.P.*, 2026 WL 1911656, at *6. Moreover, Jose V.P.R. was not detained near the border immediately upon entering the country. He has lived in the United States for nearly 30 years, and he was arrested in Minnesota. *See id*. (*comparing Thuraissigiam*, 591 U.S. 103 at 107 ("[A]liens who have established connections in this country have due process rights in deportation proceedings . . . ."), *with id.* at 140 (explaining that noncitizens "detained *shortly after* unlawful entry cannot be said to have 'effectuated an entry'")). To be sure, "Congress may make rules as to [noncitizens] that would be unacceptable if applied to citizens." *Id*. (quoting *Demore*, 538 U.S. at 522). But "noncitizens within the United States after entry, even illegal entry, are afforded 'additional rights and privileges' than those 'on the threshold of initial entry.'" *Id*. (quoting *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958)). *Thuraissigiam* therefore does not apply here.

Nor does *Landon*, which explicitly permitted the petitioner in that case to "invoke the Due Process Clause," foreclose Jose V.P.R.'s due process challenge here. 459 U.S. at 32; *see also Felipe S.P.*, 2026 WL 1911656, at *3. Neither does *Kaplan*, which addresses "the constitutional status of applicants for admission and the legal consequences of parole

for purposes of the immigration laws" bar his claim. *Juan C.M.C. v. Blanche*, No. 26-cv-2402 (JWB/ECW), 2026 WL 2117276, at *3 (D. Minn. July 22, 2026) (concluding *Kaplan* does "not hold that the Executive may continue to deprive a person physically present within the United States of liberty without constitutionally adequate procedures under the particular circumstances presented here."). As a result, the Court proceeds to the merits of Jose V.P.R.'s due process claim.

To determine whether civil detention violates a person's Fifth Amendment Due Process rights, courts look to the three-part test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Felipe S.P.*, 2026 WL 1911656, at *7. Under *Mathews*, courts consider three factors: 1) "the private interest that will be affected by the official action;" 2) "the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards;" and 3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. at 335. Respondents argue that *Mathews* is the wrong framework against which to test Jose V.P.R.'s due process claim but offer no alternative. This Court therefore follows the now well-worn path of many federal courts in this District and around the country that have found *Mathews* the most useful test to apply when analyzing what process the government owes noncitizens detained during removal proceedings, including those detained under § 1225(b)(2). *Felipe S.P.*, 2026 WL 1911656, at *7. Although neither party directly addresses the individual factors set out in *Mathews*, the Court takes each in turn.

The Court finds that the first factor, the private interest affected by official action, favors Jose V.P.R. "The interest in being free from physical detention is the most elemental of liberty interests." *Manuel G. v. Blanche*, No. 26-CV-2385 (SRN/ECW), 2026 WL 1256358, at *4 (D. Minn. May 7, 2026) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 531 (2004) (internal quotation omitted). Jose V.P.R. is currently detained in the Freeborn County Jail, where pretrial criminal detainees and those convicted of criminal offenses are also held. *See Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025) (stating that under the first *Mathews* factor, courts "consider the conditions under which detainees are currently held, including whether a detainee is held in conditions indistinguishable from criminal incarceration.") He also maintains a strong interest in remaining in the United States, where he has lived for nearly 30 years, maintains full-time employment, and helps care for his elderly mother.

The second *Mathews* factor, the risk of erroneous deprivation, also favors Jose V.P.R. Here, courts assess whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights, and consider the degree to which alternative procedures could mitigate these risks. *Matthews*, 424 U.S. at 335; *Günaydin*, 784 F. Supp. 3d at 1187. Without addressing *Mathews*, Respondents claim that the individualized bond hearing Jose V.P.R. seeks is "irrelevant" under § 1225(b)(2)(A). (Doc. 6 at 6.)

Relying on *Connecticut Department of Pub. Safety v. Doe*, 538 U.S. 1, 7 (2003), Respondents argue that a bond hearing to assess Jose V.P.R.'s dangerousness or risk of flight would fail to change the fact that noncitizens who are applicants for admission "shall be detained" during removal proceedings. 8 U.S.C. § 1225(b)(2)(A). But that case is

inapposite, as it involved a procedural due process challenge to Connecticut's post-conviction sex offender registry statute. 538 U.S. at 1162-63. In that context, the Supreme Court held that procedural due process required no pre-registration hearing to determine a person's current dangerousness because the statutory registration requirement depended on the previous conviction, not current dangerousness. *Id*. 1163-65 (stating that "due process does not require the opportunity to prove a fact that is not material to the State's statutory scheme"). This makes sense because, as the Court observed, those required to register had been afforded procedural due process in their underlying criminal proceedings leading to their convictions. *Id*. at 1164. ("As the DPS Website explains, the law's requirements turn on an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest.") Here, Respondents assert authority to detain Jose V.P.R. under § 1225(b)(2)(A), with no similar underlying proceeding providing him with an opportunity to contest his detention.

Jose V.P.R.'s detention must "bear some reasonable relation to the purpose for which" he is detained. *Seling v. Young*, 531 U.S. 250, 265 (2001); *Zadvydas*, 533 U.S. at 690 (explaining that detention must be tied to its purpose). Although risk of flight or dangerousness may justify the government's detention of a noncitizen, Jose V.P.R. has been detained without any lever by which to challenge whether his detention serves those purposes. Section 1225(b)(2) provides Jose V.P.R. no procedure to contest whether he poses a risk of flight or danger. Nor has the government provided him with any individualized review as to the necessity of his detention, and there is no opportunity for a hearing to challenge his flight or security risk.

All this, even though his life circumstances directly impact a court's assessment of these risk factors. Jose V.P.R. has lived in the United States for nearly 30 years, is employed full time, has no criminal history, and helps care for his elderly mother. Respondents have declined to provide any process by which he could raise these facts to contest the government's justification for depriving him of his liberty. "This poses a risk of erroneous deprivation that is furthered by Respondents' failure to make any argument that he would remain detained even if given a bond hearing." *Felipe S.P.*, 2026 WL 1911656, at *9 (quoting *Restrepo v. Jamison*, 823 F. Supp. 3d 529, 543 (E.D. Pa. 2026) ("Where, as here, the Government has not alleged circumstances that would indicate that [petitioner] poses a danger to the community or is a flight risk, the risk of an erroneous deprivation is higher.")). Jose V.P.R.'s detention must be reasonably tied to its intended purpose, and so his detention without any individualized determination of his risk of flight or dangerousness "increases the likelihood of erroneous deprivation." *Id.* (collecting cases). The value of a bond hearing where Jose V.P.R. can raise these facts and the government can articulate its justification for his detention is therefore significant.

Finally, the Court finds that the third *Mathews* factor, the burden the government would bear in affording additional procedural safeguards, favors Jose V.P.R. as well. Respondents fail to articulate any burden that providing a bond hearing would place on the government. And as other courts have found, this Court finds that a bond hearing would not be particularly burdensome. *See Abdirashid H. M. v. Noem*, No. 25-cv-4779 (JRT/EMB), 2026 WL 127698, at *5 (D. Minn. Jan. 9, 2026) ("[A] bond hearing would impose minimal, if any, financial or administrative burden on Respondents.") In fact,

before July 2025, the government gave noncitizens like Jose V.P.R. bond hearings. *See Jesus Alejandro G. A. v. Blanche*, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138, at *12 (D. Minn. May 18, 2026). The Court therefore finds that Jose V.P.R.'s strong private interest outweighs any burden that Respondents may assert. At a bond hearing, an immigration judge will consider Jose V.P.R.'s circumstances alongside the government's interests in determining whether release is appropriate. As a result, a bond hearing will reduce the risk of erroneous deprivation of liberty without imposing significant burdens on Respondents.

## II. NO EVIDENTIARY HEARING IS REQUIRED.

An evidentiary hearing is appropriate only when material facts are in dispute. *Ruiz v. Norris*, 71 F.3d 1404, 1406 (8th Cir. 1995). An evidentiary hearing is not required when a conclusion can be reached on the issue with the undisputed facts. *United States v. Winters*, 411 F.3d 967, 973 (8th Cir. 2005). This matter can be resolved based on the existing record, and thus the Court finds no evidentiary hearing is necessary.

## III. NOTICE ON OBJECTIONS.

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Given the expedited nature of these proceedings, the Court exercises its discretion to alter the standard timelines for Respondents to file objections to this Report and Recommendation. *See* Local Rule 72.2(b)(1) ("A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition, unless the court sets a different

deadline.") (emphasis added). Respondents must file any objection to this Report and Recommendation on or before **August 14, 2026**. Jose V.P.R. may file a response to any objections on or before **August 21, 2026**. *See* L.R. 72.2(b)(2).

## RECOMMENDATION

Accordingly, based on all the files, records, and proceedings in this case, **IT IS RECOMMENDED** that:

1. Petitioner Jose V.P.R.'s Petition for Writ of Habeas Corpus (Doc. 1) be **GRANTED.**

2. Respondents be ordered to release Petitioner Jose V.P.R. from custody

    a. Immediately;

    b. Inside the State of Minnesota with at least 8 hours' notice to Petitioner's attorney; and

    c. With all of Petitioner's personal effects in Respondents' possession or control, including, but not limited to, his driver's license, immigration paperwork, work authorization, cell phone, keys, clothing, personal effects.

3. In the alternative, Respondents be ordered to provide Jose V.P.R. with a bond hearing before an Immigration Judge in Minnesota within 7 days of the Court's Order on this Report and Recommendation.

4. To the extent that Jose V.P.R. seeks additional relief, the Petition should be **DENIED**.

Date: August 7, 2026

*s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge