**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

JOSE V.P.R.,

Petitioner,

v.

THE SHERIFF OF FREEBORN COUNTY, MINNESOTA; THE WARDEN OF THE FREEBORN COUNTY ADULT DETENTION CENTER; THE SECRETARY OF HOMELAND SECURITY; THE DIRECTOR OF U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; and THE ATTORNEY GENERAL OF THE UNITED STATES,

Respondents.

Case No. 26-CV-3047 (NEB/DLM)

ORDER

This matter is before the Court on Petitioner Jose V.P.R.'s Petition for a Writ of Habeas Corpus seeking release from Immigration and Customs Enforcement ("ICE") custody or a bond hearing. (ECF No. 1 ("Pet.").) Jose V.P.R. is a citizen of Mexico who entered the United States without inspection more than 20 years ago. (Pet. ¶ 1.) Jose V.P.R. has maintained full-time employment during that time and acts as a caregiver for his elderly mother. (Pet. ¶¶ 15, 16.) He has no known criminal history. (Pet. ¶ 15.)

On June 3, 2026, Jose V.P.R. was a passenger in a work van traveling with a crew to a job site when ICE agents approached the van and its occupants. (ECF No. 7 ¶ 5.) Jose V.P.R. presented identification documents and admitted that he had no lawful status in the United States. (ECF No. 7 ¶ 5.) ICE issued a Form I-200 Warrant of Arrest for Alien and served it on Jose V.P.R. ICE then took him into custody and brought him to the

Bishop Henry Whipple Federal Building for additional processing. (ECF No. 7 ¶ 6.) At the Whipple Building, ICE issued and served Jose V.P.R. with a Notice to Appear, Form I-862 ("NTA"). (ECF No. 7 ¶ 7.) ICE then transferred Jose V.P.R. to Freeborn County Jail where he remains detained. (ECF No. 7 ¶ 8.)[1]

In a Report and Recommendation ("R&R") dated August 7, 2026, United States Magistrate Judge Douglas L. Micko recommends that this Court grant Jose V.P.R.'s petition and order his immediate release. (ECF No. 13.) Respondents object to the R&R (Obj.), so the Court reviews it *de novo*. 28 U.S.C. § 636(b)(1). Because the Court agrees that Jose V.P.R.'s arrest was unlawful, the Court accepts the R&R and orders his immediate release. The Court similarly agrees with the R&R's alternative conclusion that Jose V.P.R.'s detention violates due process and Respondents would otherwise be required to provide a bond hearing.

## ANALYSIS

### I. Statutory Basis for Detention

Jose V.P.R. asserts as a threshold matter that he is not "seeking admission" to the United States because he has lived here for almost 30 years and so cannot be lawfully detained under 8 U.S.C. § 1225(b)(2)(A). (Pet. ¶¶ 30–33.) The Court agrees with the R&R's conclusion that under *Avila v. Bondi*, Respondents are authorized by Section 1225(b)(2)(A)

---

[1] In their objection, Respondents contend that an immigration judge ordered Jose V.P.R. removed on July 29, 2026 and that he has until August 28, 2026 to appeal that decision. (ECF No. 14 ("Obj.") at 8 n.2.) They have provided no evidence of this fact beyond their assertion. Respondents do not argue that the Court's analysis should change based on this removal order.

to detain Jose V.P.R. 170 F.4th 1128, 1137 (8th Cir. 2026). The Court therefore proceeds to Jose V.P.R.'s other claims.

## II. Validity of Warrant

"Like any federal agency, ICE 'literally has no power to act—including under its regulations—unless and until Congress authorizes it to do so by statute.'" *Luis A.S. v. Easterwood*, No. 26-CV-2447 (PJS/DTS) (D. Minn. May 26, 2026), ECF No. 9 at 2 (quoting *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 301 (2022)). The Immigration and Nationality Act provides two mechanisms by which "it is appropriate to arrest an alien during the removal process." *Arizona v. United States*, 567 U.S. 387, 407 (2012). First, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Second, under 8 U.S.C. Section 1357(a)(2), ICE has "limited authority" to make warrantless arrests. *Arizona*, 567 U.S. at 408.

Jose V.P.R. contends that Respondents effectuated an unlawful warrantless arrest when it detained him, implicitly challenging the validity of the Form I-200 warrant issued by Respondents. (Pet. ¶¶ 27–29.) Under ICE's regulations, a Form I-200 warrant authorizes a non-citizen's arrest if it is issued "[a]t the time of issuance of the [NTA], or at any time thereafter and up to the time removal proceedings are completed." 8 C.F.R. § 236.1(b)(1). In other words, "[ICE] may arrest a non-citizen using a Form I-200 only if the Form I-200 issues at the same time or after [the Department of Homeland Security] issues an NTA." *Vladimir G. v. Easterwood*, No. 26-CV-2971 (JMB/ECW), 2026 WL 1786418, at *2 (D. Minn. June 22, 2026).

Here, Respondents concede that the NTA was issued after the Form I-200 but argue in their objection that because both were issued on the same day and the NTA was

issued during processing, the warrant is still valid. (Obj. at 2.) In support of that argument, Respondents cite *Alan R.M. v. Blanche*, No. 26-CV-3261 (ECT/DTS), 2026 WL 2253802 (D. Minn. July 27, 2026), *report and recommendation adopted*, 2026 WL 2260839 (D. Minn. Aug. 4) and *Ramirez v. Genalo*, No. 26-CV-3229 (HG), 2026 WL 1815771 (E.D.N.Y. June 24, 2026). (Obj. at 2.) But *Alan R.M.* addresses only the issue of due process; it does not say that the sequencing of the NTA and Form I-200 does not matter so long as they are issued on the same day. 2026 WL 2253802, at *1–2. And this Court is otherwise not persuaded by *Ramirez*. 2026 WL 1815771, at *4. Nothing in the regulations excepts documents issued same-day from proper sequencing. 8 C.F.R. § 236.1(b)(1). The language of the regulation is clear—the sequencing matters and an NTA must be issued before a Form I-200. The Form I-200 warrant empowers ICE to arrest noncitizens *during* removal proceedings, and the NTA is what initiates removal proceedings. 8 C.F.R. § 236.1(b)(1); 8 U.S.C. § 1229(a)(1) (stating that ICE "shall" give noncitizens in removal proceedings "written notice" of the proceedings in the form of a "notice to appear"). "Thus, a warrant issued before removal proceedings have begun purports to exercise authority that does not yet exist." *Jesus F.D. v. Mullin*, No. 26-CV-2486 (PJS/DTS) (D. Minn. June 10, 2026), ECF No. 10 at 5–6.

Here, the Form I-200 was issued first, Jose V.P.R. was arrested and brought from Wisconsin to the Whipple Building in Minnesota, and then the NTA was issued. (ECF No. 7 ¶¶ 6–8.) Because an NTA had not been issued first, the Form I-200 is invalid; Jose V.P.R.'s arrest was functionally warrantless. *Vladimir G.*, 2026 WL 1786418, at *3.

## III. Warrantless Arrest

The next question is whether ICE lawfully detained Jose V.P.R. without a warrant under Section 1225(b)(2). *Francisco M.A. v. Blanche*, No. 26-CV-2032 (JRT/EMB), 2026 WL

1229701, at *3 (D. Minn. May 5, 2026); *see also Fernando C.C. v. Bondi*, No. 26-CV-1235 (LMP/JFD), 2026 WL 446408, at *2 (D. Minn. Feb. 17, 2026); *Jesus F.D.*, No. 26-CV-2486 (PJS/DTS), ECF No. 10 at 6–7.

Section 1357(a)(2) authorizes an immigration officer to effectuate a warrantless arrest of a noncitizen "if he has reason to believe that the alien so arrested is in the United States in violation of any [immigration] law or regulation *and* is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2) (emphasis added). Courts construe "reason to believe" to mean "constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).

The Court agrees with the R&R and Respondents that officers had reason to believe that Jose V.P.R. was in violation of immigration law at the time of his arrest. Jose V.P.R. made voluntary statements that did not have legal status in the United States. (ECF No. 7 ¶ 5.) But that admission alone is not sufficient for Respondents to effectuate a warrantless arrest. Respondents must also have "reason to believe" that Jose V.P.R. "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2).

Respondents argue they had probable cause to believe that Jose V.P.R. would likely escape before a warrant could be served because he had access to a car at the time of the encounter and had "actively evaded immigration authorities for over two decades, and . . . consciously refused to register his presence . . . during that time." (Obj. at 3.) The R&R thoroughly analyzed and rejected those arguments, so the Court will not repeat that analysis unnecessarily. For the reasons explained in the R&R, Respondents did not have probable cause to conclude that Jose V.P.R. was "likely to escape" when they executed a warrantless arrest. In similar situations when officers violate 8 U.S.C. § 1357(a)(2), this Court has ordered immediate release as a remedy. *Ahmed S. v. Blanche*, No. 26-CV-2265

(KMM/DLM), 2026 WL 1998718, at *7 (D. Minn. July 10, 2026) (collecting cases). The Court concludes that is the appropriate remedy here and orders Jose V.P.R.'s immediate release.

## IV. Due Process

Though the Court has concluded that Respondents must release Jose V.P.R. because his warrantless arrest was unlawful, in the interest of completeness it also reaches Jose V.P.R.'s due process argument. In doing so, the Court concludes that even if Jose V.P.R. was not entitled to release on the basis of his warrantless arrest, due process requires that he be afforded a bond hearing.

The Court has already concluded that petitioners similarly situated to Jose V.P.R. have an important liberty interest—freedom from physical restraint—that is protected by the Due Process Clause.[2] *Felipe S.P. v. Blanche*, No. 26-CV-2212 (NEB/DJF), 2026 WL 1911656, at *2 (D. Minn. July 2, 2026). Detention is a "constitutionally permissible" part of removal proceedings. *Demore v. Kim*, 538 U.S. 510, 531 (2003). But when detention implicates a protected liberty interest, it must serve a constitutionally acceptable purpose. *See Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024). Ensuring appearance at future immigration proceedings and limiting threats to public safety are interests that can justify detaining noncitizens like Jose V.P.R. *Felipe S.P.*, 2026 WL 1911656, at *4. As in *Felipe S.P.*, the Court assesses Jose V.P.R.'s due process claim using the balancing framework from *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Felipe S.P.*, 2026 WL 1911656, at *7. This framework weighs: (1) the private interest affected by government action; (2) the risk of

---

[2] Likewise, the Court has already concluded that precedent does not foreclose these constitutional challenges to detention. *Felipe S.P.*, 2026 WL 1911656, at *4–6 (distinguishing *Demore v. Kim*, 538 U.S. 510 (2003); *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024); and *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020)).

erroneous deprivation of that interest based on the current procedures, and the probable value of additional or other procedural safeguards; and (3) the government's interest, "including the function involved and the fiscal and administrative burdens" of additional process. *Mathews*, 424 U.S. at 335.

***Private interest.*** Jose V.P.R.'s interest in being free from detention is fundamental and essential to his liberty. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Over the course of his 27 years living in the United States, Jose V.P.R. has worked and acted as a primary caregiver to his elderly mother. (Pet. ¶¶ 15, 16.) These roots strengthen his private interest. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (stating that noncitizens "who have established connections in this country have due process rights in deportation proceedings"); *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) (explaining that noncitizens "receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country"). The first *Mathews* factor weighs strongly in Jose V.P.R.'s favor.

***Risk of erroneous deprivation.*** Jose V.P.R's detention must be reasonably related to its intended purpose. *Zadvydas*, 533 U.S. at 690 (reiterating that detention must bear a reasonable relation to its purpose). Thus, detaining Jose V.P.R. without an individualized bond hearing assessing his flight and security risks poses a danger of a mistaken or unjustified deprivation of liberty. *E.g.*, *Rodriguez v. Frink*, 823 F. Supp. 3d 678, 689–90 (S.D. Tex. 2026); *Bonilla Chicas v. Warden*, 821 F. Supp. 3d 782, 798 (S.D. Tex. 2026); *Chavero v. Bondi*, 818 F. Supp. 3d 836, 844–45 (W.D. Tex. 2025). But Section 1225(b)(2) does not provide Jose V.P.R. any procedure to challenge whether his detention serves those purposes; conversely, the probable value of a bond hearing assessing these facts is substantial. Jose V.P.R. does not appear to have a criminal history. *Restrepo v. Jamison*, 823 F. Supp. 3d 529, 543 (E.D. Pa. 2026) ("Where, as here, the Government has not alleged

circumstances that would indicate that [petitioner] poses a danger to the community or is a flight risk, the risk of an erroneous deprivation is higher."). The second *Mathews* factor weighs in favor of Jose V.P.R.

***Government interest & burden.*** The government has a strong interest and discretion in enforcing immigration law. *Muñoz*, 602 U.S. at 911–12; *Reno v. Flores*, 507 U.S. 292, 305 (1993) ("Over no conceivable subject is the legislative power of Congress more complete.") (citation modified). Accordingly, the Court weighs "heavily" that "control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). Even so, Respondents have not shown that providing a bond hearing is a burden that outweighs Jose V.P.R.'s private interest and the risk of erroneous deprivation; it is not obvious that a bond hearing is particularly burdensome. *Abdirashid H.M. v. Noem*, No. 25-CV-4779 (JRT/EMB), 2026 WL 127698, at *5 (D. Minn. Jan. 9, 2026) ("[A] bond hearing would impose minimal, if any, financial or administrative burden on Respondents."). Any burden that a bond hearing may impose does not outweigh Jose V.P.R's strong private interest. *Id.*

Although Respondents' interest here is great, providing Jose V.P.R. a bond hearing imposes a minimal burden. And Jose V.P.R.'s private interest and the risk of erroneous deprivation of that liberty interest are significant. On balance, the *Mathews* factors weigh in favor of Jose V.P.R., and due process requires that he receive a bond hearing.

So, in the alternative, the Court would therefore order that Respondents provide a bond hearing.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The Report and Recommendation (ECF No. 13) is ACCEPTED; and

2. Petitioner Jose V.P.R.'s Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED; and

3. Respondents are ordered to release Petitioner Jose V.P.R. from custody:

    a. Inside the state of Minnesota;

    b. At a safe time and place communicated in advance to Petitioner's attorney; and

    c. With all Jose V.P.R.'s personal effects within Respondents' possession or control, including, but not limited to, his driver's license, immigration paperwork, work authorization, cell phone, keys, clothing, personal effects;

4. In the alternative, Respondents are ordered to provide Jose V.P.R. with a bond hearing before an Immigration Judge in Minnesota within 7 days of the Court's Order on this Report and Recommendation

5. The remainder of Jose V.P.R.'s Petition is DENIED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 28, 2026

BY THE COURT:

s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge